## Case No. 1,221.

### BEECHER et al. v. BECHTEL et al.

[3 Blatchf. 40;[1] 30 Hunt, Mer. Mag. 196.]

Circuit Court, S. D. New York. Sept. 23, 1853.[2]

SHIPPING — CHARTER-PARTY — AGREEMENT FOR
FULL CARGO OF LUMBER — PIECES TOO LARGE
FOR PORT-HOLE—DUTY TO WIDEN.

The charter-party of a vessel provided that
the whole of it, except the part necessary for
the officers and crew, and for stowing sails,
cables, and provisions, should be at the dis-
posal of the charterer, for a specific voyage.
The charterer agreed to furnish a full cargo of
lumber and timber for the voyage, at a speci-
fied price per thousand feet. After the vessel
had received part of her cargo, the charterer
desired to put on board two pieces of timber that
were too large to be received through the port-
hole of the vessel, and insisted that the port-
hole should be enlarged to receive them, and
refused to furnish any more cargo till that
was done. Thereupon, the master landed the
cargo that had been taken on board, and left
for another port, in ballast. *Held*, in an action
by the owner against the charterer, to recover
compensation for the loss sustained by the fail-
ure to furnish the cargo, that the undertaking
of the charterer was to furnish a cargo of such
timber as was suitable to the capacity and con-
dition of the vessel, and that the owner did not
undertake to convey a given quantity of lum-
ber and timber generally, and was not bound to
alter the port-hole of the vessel.

[Appeal from the district court of the Unit-
ed States for the southern district of New
York.

[In admiralty. Libel by William K. Beech-
er and others against George J. Bechtel and
John H. Dryer, Jr., for breach of a charter-
party.] This was a libel in personam, filed
in the district court, to recover compensation
for the loss and damage sustained by the
libellants, as owners of the brig Buenovento,
by reason of the non-fulfilment, by the re-
spondents, of a charter-party. The libel was
dismissed by the district court, [Case No.
1,220a,] and the libellants appealed to this
court. [Reversed.]

N. Dane Ellingwood, for libellants.
George F. Betts, for respondents.

NELSON, Circuit Justice. The brig Bueno-
vento, of two hundred and fifty tons burthen,
was chartered from the libellants by the re-
spondents, at the city of New York, on the
2d of October, 1849, to carry a cargo of lum-
ber and timber from Charleston, in South
Carolina, to Barcelona, in Spain. The owners
engaged that the whole of the vessel, except
the part necessary for the accommodation of
the officers and crew, and the stowage of
sails, cables, and provisions, should be at the
disposal of the charterers, who agreed to
furnish a full and complete cargo of lum-
ber and timber for the voyage, and to pay,
as freight, eleven dollars per thousand super-
ficial feet, with five per cent. primage. The
cargo was to be delivered and received

[1] [Reported by Samuel Blatchford, Esq., and
here reprinted by permission.]
[2] [Reversing Case No. 1,220a.]

alongside of the vessel, within reach of her
tackles. The charter was to commence when
the vessel should be ready to receive the car-
go at her place of loading, and notice thereof
should be given to the charterers.

The vessel, in pursuance of the charter-
party, arrived at the port of Charleston on
the 14th of the month, ready to receive her
cargo. After she had received on board a
considerable portion of it, the agent of the
shippers delivered, for the purpose of being
shipped on board, two large masts or spars
—the one twenty-seven inches in diameter,
and the other twenty-eight inches—round
timbers, and sixty feet in length. The lum-
ber was received through a square port-hole
in the forward part of the vessel, called the
bow port, and which could not receive timber
of the length and dimensions of these spars,
the port being only twenty-four inches
square, which would not receive timber of
the length of the spars exceeding twenty-
two inches in diameter. The port-hole was
of the usual size for vessels of the burthen
of the Buenovento. The master, having
waited some sixty-three days in all for lum-
ber and timber suitable to the size and capac-
ity of the vessel, and the agent of the ship-
pers refusing to furnish other lumber till
the spars were taken on board, and insisting
that the port-hole should be enlarged so as
to receive them on board, landed the portion
of the cargo that had been taken on board,
in pursuance of orders from the owners in
New York, and left for another port, in bal-
last, after full notice to the agent of his in-
tention so to do, unless the cargo of the ves-
sel was completed.

A good deal of evidence has been taken
on both sides upon the point as to whether
or not the port-hole could have been en-
larged without injuring the strength and af-
fecting the seaworthiness of the vessel. It
is exceedingly doubtful, upon the evidence,
whether or not the necessary alteration could
have been made without permanently dis-
abling her and rendering her unseaworthy;
and the estimate of the expense varies from
fifteen dollars to three hundred dollars, ac-
cording to the various witnesses. I shall
not undertake to weigh this evidence, as it
respects the question either of the practica-
bility of the alteration or of its cost; for,
in my judgment, the owners, upon any just
and proper construction of the charter-party,
were not bound to make or submit to the re-
quired change.

The charter was entered into in the city of
New York, and the vessel lay in that port at
the time. An opportunity was thus afford-
ed to the charterers to make any examina-
tion of her they might desire. Her tonnage
is specified in the charter-party, and the
only covenants entered into by her owners,
in respect to her character and condition,
are, that she shall be seaworthy; that, dur-
ing the voyage, she shall be kept tight,
staunch, well fitted and tackled, and provid-

ed with every requisite, and with men and provisions necessary for the voyage; and that she shall receive on board all such lawful goods and merchandise as the charterers may see proper to ship, the same to be properly stowed by the ship's crew, or by such other suitable persons as the captain may employ, at the vessel's expense; the charterers agreeing to furnish a full and complete cargo of lumber and timber.

I agree that, if the owners had undertaken to convey from Charleston to Barcelona a given quantity of lumber and timber generally, for a specified price, they would have been bound to furnish a vessel that could have received and shipped any description of the article mentioned, which, according to the usage and custom of the trade, was ordinarily shipped at the former port. Such would have been the fair and reasonable import of the contract. But here, no such contract has been entered into. The owners have simply chartered their vessel, and have stipulated that the whole of it, with the exceptions stated, shall be at the sole use and disposal of the charterers during the voyage; and that no goods or merchandise whatever shall be laden on board, otherwise than by them or their agents, without their consent. It is an engagement, therefore, on the part of the owners, not that they will convey between the ports mentioned a given amount of lumber and timber for the price mentioned, but that the vessel named shall be employed, for the particular voyage, in the conveyance of those articles. It seems to me clear, therefore, that the undertaking of the charterers is to furnish a cargo, at the port designated, of such lumber as is suitable to the capacity and condition of the vessel; and that it would be carrying the contract beyond the intent and scope of it, to consider the same as an engagement to convey a given quantity of the article generally, without regard to the means of conveyance.

Some evidence has been given tending to show that it is not unusual to enlarge the port-holes of vessels employed in the conveyance of lumber, to enable them to receive on board spars of the size of those delivered in this case. But the evidence is slight, and does not approach to the establishment of a usage or custom in the trade, especially in the case of a charter-party like the one in question. It may well be that an owner who enters into an engagement generally, to convey a given quantity of lumber and timber, might find it necessary to alter materially the construction of his vessel, to enable him to comply with the terms and conditions of his obligation, as, under such a charter, he would be bound to carry any description of the article within the usage and custom of the trade. Under such a contract, there would be no reference to any particular vessel or mode of conveyance. But where, as in the present case, a particular vessel has been chartered for the conveyance of a cargo of lumber, the obligation is different, and the charterers are, in respect to the cargo to be furnished, bound to regard the capacity and condition of the vessel. I agree, that changes of a temporary character, as it respects the interior of the vessel, such as may be usual and customary in the trade, for the accommodation of the cargo, may be proper and within the duty of the owners. But changes affecting her safety and sea-worthiness, and thereby permanently lessening her value, cannot, it seems to me, be regarded as falling within the contract; and this, even assuming that it may be matter of doubt whether the damage to the vessel will or will not be serious and permanent. The contract, in my judgment, does not impose upon the owners the hazard of the contingency supposed.

Upon the view, therefore, which I am obliged to take of the case, I think that the decree below is erroneous, and should be reversed. There must be a reference to the clerk to ascertain the loss and damage sustained by the libellants.